OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be affirmed.
In the course of the selection of the jury for the trial in this case defense counsel’s application to excuse two prospective jurors for cause was denied. In response to counsel’s questions these jurors had said that although they did not associate with blacks they could render a fair and *884 impartial verdict. They also indicated that they did not approve of interracial marriages between blacks and whites but stated that they did not feel that the circumstance that defendant had had a white girlfriend and, although unmarried, they had brought a child into the world would interfere with their verdict. On a more general interrogation of the members of the panel each and every juror answered in the negative as to whether his feelings would affect his ability to sit on this jury and listen fairly and impartially. Each one indicated that, although he might not be in favor of mixed marriages, that fact would not affect his ability to sit on this jury.
Defense counsel was offered an opportunity, of which he did not avail himself, to pursue the matter further.
[I] It was not error to deny the application to excuse these two jurors for cause.* This case presents a situation significantly different from that in People v Blyden (55 NY2d 73) on which defendant and the dissenting Justice at the Appellate Division rely. In that case, the juror in question volunteered his desire to speak to the Judge; he disclosed his individualized basis for opposition to minorities in general including blacks (difficulties in connection with his construction job in the course of which he admitted that he had “been known to flip [his] wig” and “got up tight”). At first he stated that he didn’t know whether his feelings would affect his deliberations (“I don’t know if it would or not, and I wouldn’t want to jeopardize this guy’s case, because of that. That is why I came forward.”). Finally, in response to the court’s thrice-repeated question whether he could put aside his feelings about minorities, the juror was prepared to say no more than, “I think I could.” In those circumstances we held that it was error not to have discharged the juror.
In the case before us the only feelings of the jurors were expressed in the abstract, with no disclosure of particular personal conduct ever taken in consequence of such feelings, as was true in Blyden, or any other indication of inability to lay personal predilections aside; and the jurors *885 expressed their confidence that, notwithstanding their feelings, they could listen fairly and impartially and that their feelings would not affect their ability to sit on the jury.
We assume that most if not all jurors bring some predispositions, of varying intensity, when they enter the jury box. It is only when it is shown that there is a substantial risk that such predispositions will affect the ability of the particular juror to discharge his responsibilities (a determination committed largely to judgment of the Trial Judge with his peculiar opportunities to make a fair evaluation) that his excuse is warranted. Were the rule otherwise, it would be difficult not to require the discharge, in every case such as the present in which racial bias if it existed could be said possibly to affect the determination of guilt of the particular defendant, of every potential juror who disclosed anything but total absence of prejudice with respect to racial differences, notwithstanding his stated readiness to lay his feelings aside in the discharge of his duties as a juror.
With respect to defendant’s other contentions before us we observe that there are affirmed findings of fact that defendant had been properly given the preinterrogation warnings to which he was constitutionally entitled, that his subsequent oral inculpatory statement was voluntarily made, and that Trooper Ross had probable cause to arrest him. None of these factual determinations was erroneous as a matter of law. Nor was it error to admit into evidence the tire iron and blue paint chips; the foundation laid was not insufficient because of deficiencies of proof with respect to the chain of custody. Finally, we, too, conclude that the evidence was sufficient to sustain the finding of defendant’s guilt beyond a reasonable doubt.
Chief Judge Cooke and Judges Jasen, Jones, Meyer, Simons and Kaye concur; Judge Wachtler taking no part.
Order affirmed in a memorandum.

 We assume, as apparently did the Appellate Division, that the prescriptions of CPL 270.20 (subd 2) with respect to exhaustion of defendant’s peremptory challenges were met in this instance.